JOHN ILLINGWORTH

*v.*

ALFRED ROWE and THE NEWARK LUMBER COMPANY.

1. To state a case of strict interpleader, the complainant must show that conflicting claims are made against him by two or more persons for the same thing; that he has no interest in the subject-matter of their controversy, and that the title to the thing in dispute is in some of the hostile claimants, but he cannot tell which; and all the relief he can ask is that, on the surrender of the thing in dispute, his liability shall cease, and that thereupon the hostile claimants be required to settle their dispute among themselves.

2. But under a bill in the nature of a bill of interpleader the complainant has a right to ask for active affirmative relief; as, for example, where there is a dispute between two or more persons as to which is entitled to a mortgage debt, the mortgagor may file a bill to procure a decree, adjudging which of the hostile claimants is entitled to the debt, and that, on its payment, the mortgage shall be surrendered to him for cancellation.

3. And so where a house has been erected for a landowner under a written contract, which has been filed, and before the payment of the whole of the contract price, a dispute arises between the contractor and a person who has furnished material, which has been used in the construction of the house, as to who is entitled to the balance of the contract price, in consequence of which the owner is placed in a position where he may be compelled to pay the same debt twice, the owner may file a bill, in the nature of a bill of interpleader, to have it determined to whom he shall pay the balance remaining in his hands, and that, on such payment being made, all right of lien against his house and land shall become extinct.

On demurrer.

*Mr. Frederick F. Guild* and *Mr. Edward M. Colie*, for the demurrants.

*Mr. David A. Ryerson*, for the complainant.

VAN FLEET, V. C.

This is an interpleader suit. Two of the defendants have demurred to the bill for want of equity. As a bill of strict interpleader I do not think the bill can be sustained, but if it be

Illingworth v. Rowe.

considered as a bill in the nature of a bill of interpleader, then I think it must be held to exhibit a case which clearly entitles the complainant to relief. Not relief of the kind now asked, but such relief as the court may, under a bill in the nature of a bill of interpleader, grant upon the facts admitted by the demurrants. To state a case of strict interpleader it is necessary for the complainant to show that conflicting claims are made against him for the same thing by two or more different persons, to aver that he has no interest in the subject-matter of their controversy, and also admit that the title to the thing in dispute is in some one of the conflicting claimants, but in which he is unable to decide. He cannot ask for affirmative relief against either of the hostile claimants, but must content himself with simply praying, that they be required to cease from troubling him, and to settle their dispute, by some appropriate judicial proceeding, among themselves. But, as is said by Judge Story, both in his commentaries on *Equity Jurisprudence* and *Equity Pleadings,* " there are many cases where a bill, in the nature of a bill of interpleader, will lie by a party in interest to ascertain and establish his own rights, where there are other conflicting rights among third persons." Among the instances which he gives, in which it is proper to have recourse to this remedy, is this :

" If a mortgagor wishes to redeem the mortgaged estate, and there are conflicting claims between third persons, as to their title to the mortgage money, he may bring them before the court, to ascertain their rights, and to have a decree for a redemption, so that he may make a secure payment to the party entitled to the money." *2 Story Eq. Jur. § 824; Story Eq. Pl. § 297 b.*

In such a case, if the complainant prevails, he gets affirmative relief—a decree that, on the payment of the mortgage debt, the mortgage shall be surrendered to him for cancellation.

Briefly stated, the case made by the bill is thus : The defendant Rowe made a contract to erect three houses for the complainant for $2,550 for each, the contract price of each to be paid in three installments, as the work on each reached a specified stage in the course of completion. Rowe agreed to furnish all the material and do all the work, and have the houses com-

pleted on or before February 1st, 1893. The contract was filed. Rowe made a subcontract with one George Bopp, for the erection of the houses. After one of the houses had been completed and the contract price for that had been fully paid, and two installments of the contract price of the other two had also been paid, both Rowe and Bopp quit work on the remaining two, leaving them in an unfinished state. The complainant then, after giving Rowe the notice required by the contract, procured material and workmen and completed them himself. On July 13th, 1893, the complainant and Rowe had an accounting to ascertain the balance remaining due under the contract, and agreed that such balance was $1,566.31. Of this sum the complainant paid Rowe $897.36 and retained $668.95. Prior to the accounting, the Newark Lumber Company had given the complainant written notice that it had furnished to Bopp material of the value of $668.95, which had been used in the construction of his houses, and for which it had not been paid. A written memorandum of the accounting and settlement was made, and signed by the complainant and Rowe, in which it is stated that the $668.95 is retained by the complainant on account of an alleged claim of the Newark Lumber Company, for materials furnished for the complainant's houses, of which the Newark Lumber Company had given the complainant notice, but which Rowe disputed. The memorandum then says:

"The said John Illingworth is to file immediately, in the court of chancery of New Jersey, a bill of interpleader, and pay the said sum of $668.95 into court; but the said Alfred Rowe does not consent or admit that the case is a proper one for a bill of interpleader, and reserves all rights of action, and all rights to plead, demur or answer said bill of interpleader, which he would have had had this settlement not been made."

The bill further alleges that the Newark Lumber Company has not been paid for the material which it furnished to Bopp, and which was used in the construction of the complainant's houses; and also that it has not released any right which it acquired by furnishing the material; and also that it claims that the debt which was created by the use of its material in the construction of the complainant's houses, may, by force of the

statute, be made a lien on the complainant's buildings and land; and also that it threatens to file a lien claim for such debt against the complainant's buildings and land, and institute a suit to enforce its payment.

This summary of the bill shows that the material facts admitted by the demurrants are, *first*, that the Newark Lumber Company furnished material which was used in the construction of the complainant's houses, and which has not been paid for; *second*, that whatever right the Newark. Lumber Company acquired by furnishing the material so used has not been released, but still remains in full vigor, and also that, prior to the accounting between the complainant and Rowe, notice in writing had been given by the Newark Lumber Company to the complainant that it had furnished material, which had been used in the construction of his houses, for which it had not been paid; *third*, that the complainant still has in his hands sufficient money, earned under the contract, to pay for the material which was furnished by the Newark Lumber Company and used in the construction of the complainant's houses; and *fourth*, that the Newark Lumber Company intends to enforce its debt for the material so furnished by filing a lien against the complainant's buildings and land and bringing suit thereon.

The rights and duties of the parties to this litigation are prescribed by the Mechanics' Lien law, as amended by the act of 1892. *P. L. of 1892 p. 358.* The great object intended to be accomplished by the Mechanics' Lien law is to secure to any person, who does work in the construction of a building or who furnishes material for its construction, pay for the work so done and material so furnished. To effect this object, workmen and materialmen are given, either a right of lien against the building and the land whereon it stands, or a right to pursue, and have appropriated to the payment of their debts, the money which is earned in the construction of the building, when it is erected by a contractor, under a written contract, which is made a matter of public record. Assuming the primary purpose of the Mechanics' Lien law to be what it has just been described to be, it will not be necessary to consider, in this discussion, any part

of that law except the act of 1892. That act, in substance, declares, that when a building is erected under a contract in writing, which shall have been filed in conformity to the direction of the statute, no person shall have the right of lien given by the statute, except the contractor, provided, that when the owner pays any part of the contract price, the contractor delivers to the owner a release, executed by all persons having a right of lien, releasing their lien, together with an affidavit, made by the contractor, declaring that no other persons, than those named in the release, have furnished any material for or done any work on the building for which a lien can be claimed. And the statute then, in substance, says, that any payment made upon the presentation of such release and affidavit shall be a full and complete bar to any and all right of lien for work done or materials furnished prior to the date of such release, except as to any person, not mentioned in such release, who may, prior to the making of such payment, have given notice to the owner that he has done work or furnished material for such building.

It is manifest that the things which this statute requires to be done, in order to deprive the Newark Lumber Company of its right to a lien, or to such part of the money earned under this contract as will be sufficient to pay its debt, have not been done. It has released naught. It is undisputed, that prior to the settlement, and while the complainant still held over $1,500, earned under the contract, it gave him the notice required by the statute to preserve its right of lien, and that he, in obedience to such notice, still retains sufficient money, earned under the contract, to pay its claim. The money was retained with the express assent of Rowe. He also expressly assented to its payment into this court. I shall not stop to consider, whether or not, while this money remains in court or in the hands of the complainant, the Newark Lumber Company can successfully assert a right of lien against the complainant's buildings and land. He, and not the Newark Lumber Company, is the person who is seeking protection. He admits that he owes somebody a debt for which a lien may be claimed. He is willing to pay that debt once but not twice, and he asks to be protected against the

injustice of being compelled to pay it to two different persons. It is certain that if he pays Rowe the $668.95, whether he does so voluntarily or under compulsion, the Newark Lumber Company may, under the act of 1892, file a lien against his buildings and land.

The counsel of Rowe contended, earnestly and with apparent sincerity, that if the complainant has incurred a double liability for this debt, such liability is the result of his own negligence. And the negligence he imputed to the complainant consisted in the fact, that the complainant after the accounting, and without first requiring Rowe to deliver the release and make the affidavit required by the act of 1892, paid to Rowe all the money that was found, by the accounting, to be due under the contract, except a sum sufficient to pay the debt of the Newark Lumber Company. But it is impossible for me to see how the complainant's conduct, in this respect, can, in any sense, be regarded as negligent or otherwise faulty. I think, on the contrary, that his conduct was sufficiently cautious to give him the protection he was entitled to against the conflicting claims asserted by Rowe and the Newark Lumber Company and also eminently liberal towards Rowe. Rowe certainly has no right to complain because the complainant paid him money, which was not in dispute, but which he could not have been compelled to pay until all persons having a right of lien had released such right. In my judgment, it would be a dull and distorted sense of justice which would impose a double liability on a citizen because he had waived a legal advantage, which was not necessary to his protection, and dealt liberally with another citizen. The complainant, without fault on his part, is in a position where he may be compelled to pay the same debt twice. Equity will not leave him in that position. If no remedy for such a wrong existed, it would be the duty of a court of conscience to invent one. The complainant's position is substantially like that of a mortgagor whose land is subject to a mortgage, which he wants to pay, but which he cannot safely pay because different persons make conflicting claims to the mortgage debt. In that case, it is settled, as has already been stated, that the mortgagor may file a bill, in

the nature of a bill of interpleader, in order to have a determination as to whom the mortgage debt shall be paid, and also for affirmative relief, adjudging that, on payment being made, the mortgage shall be surrendered for cancellation. *Railroad Co.* v. *Clute, 4 Paige 384, 392 ; Wakeman* v. *Kingsland, 1 Dick. Ch. Rep. 113, 116 ; Aleck* v. *Jackson, 4 Dick. Ch. Rep. 507, 509 ; 8 Story Eq. Jur.* § *824 ; Story Eq. Pl.* § *297 b.* And so too, the purchaser of land, who takes possession and makes permanent improvements before acquiring title by deed, and before the payment of the purchase-money, and then a dispute arises as to whether the title of his vendor is not void as against the creditors of the person who conveyed to his vendor, may file a bill, in the nature of a bill of interpleader, to have it determined to whom he shall pay the purchase-money, and what, on the payment of the purchase-money, shall be done to invest him with a good title to the land. *Parks* v. *Jackson, 11 Wend. 442, 450 ; Story Eq. Pl.* § *297 b ; 2 Story Eq. Jur.* § *824.*

As is obvious, the case made by the complainant's bill comes directly within the principle established by these authorities. On the case as it now stands, the complainant is entitled to relief, and the demurrers must, therefore, be overruled.